Good morning, Your Honors. Good morning. Caroline Donovan for Plaintiff Appellant. Permission to reserve two minutes for rebuttal. That will be granted. You may proceed whenever you like. Your Honors, we are here today because the lower court incorrectly held that the plaintiff did not allege an economic injury for purchasing a medication that was carcinogenic. This medication is called Belvik. Now, this is directly contrary to the Third Circuit's recent holding. No, it's not directly contrary. None of the precedents we have is exactly on point. Your Honor, that is, you know, correct at the time, especially when the lower court ruled in this way. Hortez obviously was not decided on yet. However, in Hortez – Well, this is a head scratcher a little bit. We got two of them, okay? And parties are on both sides. Tell us why your case is different from Johnson & Johnson. Yes, Your Honor. So, there's two real issues in In Re, J & J, and they do relate. So, essentially, in In Re, J & J, it was pleading deficiencies that essentially were the reason – No, no, no, no, no. Different theories. So, you know, you are not alleging that you were – your client's not alleging she was injured, okay? And J & J said if you got an unsafe good that didn't injure you, you can't claim it. Now, if you bought something and then you had to throw it away, maybe then you could claim an economic injury. We have, you know, the eyedropper case, Cottrell, excess waste. But that's not the claim here either. She's claiming she took it, she used it up, she didn't have to throw anything away, so it's not an economic harm. But she – in retrospect, she wishes she had paid less for it, even though she shows no physical harm. Other people might have been injured. Other people might have standing. But why is it that the price theory that it was riskier, it was unsafe, and in retrospect, she wishes to pay less. Huertas didn't cover that. J & J didn't cover that. Cottrell didn't cover that. Why should we treat this case as more like Huertas or Cottrell than like J & J? Yes, Your Honor. So, in terms of In re, J & J, the plaintiff in that case explicitly stated that she was not at risk at getting the injuries that were presented in that case. But, however, in this case, our plaintiff explicitly states that everyone who took this product was put at risk of getting cancer. But she didn't get it. She's not saying she's still at risk. Your Honor, she is because that this product is, you know, everyone who takes this product is put at risk. The injury occurs at the time of purchase. Does she aver that she is still at risk for getting cancer? Yes. Where is that? So, Your Honor, I know it's not explicitly stated in the complaint. But there is sufficient allegations and facts that put it beyond a mere conjecture that, you know, the FDA recall instruct every single person to stop using this product because of its dangers. If you are contending that she is still at risk, I mean, maybe the case isn't ripe. I don't know. But I don't see that in the complaint. You would have to allege that. Because that is a potential harm at least. Here there's no, from what I can see, she's not contending that. And there's no real even potential harm, speculative harm. Well, Your Honor, so the reason why this is ripe is because the injury itself for standing is not the physical injury. It's the fact that a product is inherently worthless than it otherwise would be. But you're saying it's an economic injury. It's not worthless. It's worthless. It's worth, it's worthless or worth less. And so it's the plaintiff's position that this was an entirely worthless product. Because she would not have. But she needed to lose weight, and she took it, and it was a weight loss product. That's correct, Your Honor. And she lost weight. She lost weight. Your Honor, she does allege that it did not meaningfully impact her weight. There are studies to show that it wasn't actually as effective as it should have been for me. Well, that might be a valid charge, that you buy something and it really isn't effective. I mean, and it's worth less. But her contention is it's worth less. And she's trying to pinpoint by everybody else saying, oh, well, I wouldn't buy something that has cancer. Right. And coming up with this number. Her theory is not it was bad as a weight loss, for weight loss. It was that there was a risk that was a side effect that would have caused her not to buy it or not to pay so much. So it's different from, eh, not a good weight loss drug. Your Honor, I want to talk about this element of risk because in Hortus and these other cases that talk about risk, it's about whether there's a risk that the defect is actually manifested in the product. So in Hortus, for example, when they talk about, you know, whether or not the benzene, it was a contamination case. So they talked about whether or not the benzene was actually in the product. It's not about the underlying risks associated with the benzene. It's the fact that when a product has a defect, which in this case it does, it has a design defect, that it's inherently worth less than it should have been. I can see a couple of ways in which that's concrete. One is you buy it, then the risk is disclosed, then you throw some of it away. OK, you've wasted some money. You're going to maybe buy some more. Another is you buy it, you take it, you get sick. Or maybe you've learned about the risk beforehand and you throw it away. You've taken some of it and you get sick. So I could see physical injury. I could see pleading maybe even if there's some psychological. Did she go to therapists or something else? But none of those is your theory here. Your theory is simply that she, in retrospect, values it less. Is there any precedent across the country that involves someone whose retrospective valuation drops and a court says there is Article III standing in federal court? Yes, Your Honor. So one is actually in Hortez. It wasn't about ‑‑ No, it was the vector there. It was contaminated. I have something here. It's contaminated. Correct. I can't use it. I have to throw it away. I can't use it. Your Honor, so I want to touch upon that, and it will go towards your point, Judge Rendell. So in terms of the throw it away, we know that that was not the basis of the Hortez court's holding. That's in footnote 8, I believe. In footnote 8, they explicitly state that the plaintiff brought forth three theories for standing. One was benefit of the bargain, which is what we are bringing forth here. The second was having remaining product left over, and the third was needing to purchase a replacement. The court explicitly laid out these three standards and said because we find this plaintiff alleges benefit of the bargain, we are not ruling on the remaining two. So the fact that there was remaining product in that case was inconsequential to the decision. In fact, when the court talked about worthless versus worth less, it talks about because you allege enough to show that the product was even worth a penny less, we don't need to value what that might be. So if they were ruling on the fact there was product left over, they would have referred to that when talking about the valuation of damages. But they still had some product at the time that it was worth less. That's correct, Your Honor, but that didn't hold any weight on the holding in that case. And I want to touch upon, because you had just asked me if there was any cases across this country that hold the theory, you know, if you allege you wouldn't have purchased the product had you known, then that is sufficient for Article III standing. And that is evident. Well, my question was, if we adopt your theory, is it true that anyone who ever purchased the product would be able to be a plaintiff, would have standing? Everyone who purchased this product, Your Honor? Yes. Yes, Your Honor, because if those plaintiffs, you know, as plaintiff alleges that class hers as well as class members relied on this product being safe. But every single person who took this product was put at a risk of getting cancer. The FDA instructed... How about anybody who purchased it? If it's in your... What if you took none and it's in your... And you didn't take it? Everybody who put out money for this can be a plaintiff in this case, or would have standing. Your Honor, that seems to be, you know, like a question for, you know, class certification. But for the purposes of this, I would say that if they purchased it, you know, assuming that they were going to be able to take it and they otherwise couldn't, then yes, they would have injury. But again, of course, that's for class certification and limiting the class later on. How does put at a risk constitute standing? So... If you're put at a risk of something, yet the risk never materializes, how have you been harmed? So, Your Honor, it really comes down to, you know, we know in this case specifically. Right. We know she hasn't been harmed. Indeed. Correct, Your Honor. But it's, you know, firstly, I just want to point out that, of course, we don't know whether in the future she might develop cancer. Again, that's not in the case. But what we do know, Your Honor, and the reason it's not in the case is because this is an economic injury. So, second, that... Before we move on from that, this was a lot like Johnson & Johnson, I think. And the opinion there says the product was, that it was not unsafe as to her. Isn't it the same thing here? So, the reason the court concluded that it was safe as to her was, again, it was part of the pleading deficiencies. And I know that wasn't entirely of it. But because the plaintiff in that case alleged that she would continue to purchase the product at the same exact price, that it did not put her at an increased risk of cancer, they had to conclude that the defect was not actually manifested in that plaintiff's product. Here, we know that the defect is manifested in every single product. In Huertas, the product flaw is such that the product can't be used. This person is stuck with some stuff that he bought that he can't use. Well, she's already used it, and she's used it as a drug. And she's not... I mean, if she winds up suffering a health problem going forward, that's a different theory of injury. But yours is an economic theory of injury, and she's not stuck with anything left that she can't use. Correct. Your Honor, that is correct. But the point in Huertas, and they make explicitly clear that they're not ruling on the fact that the product... I'm looking at the text of the opinion on page 1175. The logic requires little elaboration. This is not the footnote. This is after that footnote call. If a product contains a manufacturing flaw so severe that it cannot be used, it is not worth the full price purchasers paid with the understanding they would be able to use all of the product. She used all of the product. That is correct, Your Honor. But the issue is that the unusableness of this product is the defect was in the product at the time she purchased it. It never should have been used. This wasn't something that... But she used it, but the harm that would have caused her not to use it didn't eventuate. Well, Your Honor, of course, that's not as of yet. That's a different theory of standing. But your economic theory, benefit of the bargain theory, cannot be the one that is in the text of Huertas, that the argument, not the footnote 8, that is saying those people couldn't use the product. They were stuck with some product that was worthless. And she used the product as a diet drug. Yeah, so I want to go to in-rate even flow. That's a First Circuit case. Let me back up a minute. Isn't your logic that, okay, I spent $40 for this weight loss drug. If I had known it had a cancerous substance, I never would have bought it, okay? So I spent $40. Instead, I would have bought a different weight loss product, and that product cost $45. I mean, isn't it logical that you really don't have any damage unless you say that you would have bought a product that costs less and told us how much less it would be? Because your economic injury is not the whole $40. You got it, you used it, it was a weight loss drug. It's that had you known, I mean, you said it yourself, had you known you wouldn't have bought it. You would have bought a different one. So are we really going to go through that in all these cases? And say, okay, well, you didn't buy that one. You would have bought another one. I mean, the courts are going to be doing mathematics left and right. Yeah, Your Honor, so the theory you're referring to, of course, is the alternative product theory. The plaintiff isn't alleging that she would have bought a different one. It's that she wouldn't have bought this product. And I want to just make clear that every time the plaintiff took this product, she took five rounds over the course of six months. It was two pills per day. Now, every time she took this pill, she was rolling the dice on whether or not she would get cancer. A product that does that to someone. It didn't help sneak eyes. Your Honor, but the point is you wouldn't pay for a product that has you roll the dice on getting cancer. It is the economic injury. It is inherently worthless. This is consistently held. You may not buy something where you're going to roll the dice, but the issue isn't would you buy it. It's do you have standing to sue someone for harm? Your Honor, economic injury is a, every court in this country has held that economic injury is a substantive injury for the purposes of standing. That is the harm. A product that causes cancer, that puts you at an increased risk of cancer, is inherently worthless. A reasonable consumer, I know I wouldn't pay for a product. What case says that? That a economic injury. Is based upon, you know, a retrospective look at risk. Well, Your Honor, it's not the retrospective. It's just that an economic injury is a. Well, but this is retrospective. This is the fact we have. Sure, retrospective. In re aqua dots in the Seventh Circuit. Let me come at this a different way. Let's imagine that we adopt this as a rule not only of standing, but of substantive liability. Then all the people who got cancer get to sue the manufacturer for the full value of the cancer. Plus, all the people who didn't get cancer get to sue the manufacturer. If that were a substantive rule, not just a rule of standing, wouldn't that lead to double recovery, an over deterrence? So, Your Honor, in this case specifically, that's actually where the PLA comes into play. So, the PLA would, of course, exclude anyone who's claiming a physical injury based from the product. But here, our injury is specifically with the product itself. We're not seeking damages for compensation for cancer, monitoring, or treatment for cancer. It's the economic injury for paying the product itself. So, to answer your question, there wouldn't be, you know, a double windfall for certain plaintiffs who have cancer. But in the aggregate, in the aggregate, you get a whole bunch of plaintiffs recovering for all the cancer. Plus, under ordinary tort law. Plus, you'd get a whole bunch of plaintiffs like yours recovering for this economic value. I mean, look, if that's what the legislature said, that's what the legislature said. But it does seem odd that we're licensing, that we would be licensing a theory of injury that, taken to its logical conclusion, would lead to a whole bunch of people being able to claim for cancer. The ripple effects of cancer risk, but only a few got it. Which I would get if yours were like an emotional harm fear theory, but that's not it either. Wouldn't it bankrupt drug companies? Let's say the drug company sells $3 billion worth of this drug. And, you know, a couple people get sick. But everybody else sues, you have a class that sues on economic injury. And they have to give back the $3 billion that they sold when nobody really got sick. I mean, that just seems to me, the idea of putting risk in, I think you need a better policy decision to do that. You'd be disincentivizing every scientific, you know, discovery. If there's a risk of something happening, then all these wonderful sales, it's a miracle drug, Ozempeca, all these weight loss drugs. Can you imagine? So, Your Honor, I just want to, you know, we are at a motion to dismiss standard, of course, at the time. Those concerns may be brought up in later when the merits are addressed, class certification. Yeah, but it's just from a practical standpoint of whether the argument really fits. Sure. So, just two points. Of course, as you know, you know, considering the implications on the defendant companies, of course, is not a consideration at the time of motion to dismiss. But I just want to be clear that in this case specifically, you know, we allege that the defendants were in possession of a study that they did not release to the public until much later. This was a five-year study showing the increase in humans. Now, in terms of, you know, risk and the nature of the risk, it's whether or not at the motion to dismiss stage, at least, you know, is there sufficient facts to show that if this risk were to be true, that there was an economic injury. In this case, we do have sufficient facts to show the FDA explicitly instructed people to stop taking this product. They actually instructed people to crush it up with cat litter and dispose of it in a plastic bag. Now, this is a dangerous product. This was after the fact, too. Correct. This wasn't something that was released contemporaneous with her using the drug at all. Correct. Anything else? No. Thank you. We'll hear from you on your bottle, and we'll hear from your friend. Thank you. Sure. Thank you.  Good morning, Your Honors. May it please the Court. Ashley Burkett on behalf of Apoly Asi, Inc. Plaintiff's action violates the first rule of standing. You need an injury that is personal to you. Plaintiff doesn't have that because her theory is that Belvique is less valuable because of an alleged risk. But her allegations show that she used the medication, it provided a benefit for her, and it was safe for her. Now, the record could not be more clear about what Plaintiff is alleging regarding personal injury. Well, let's just jump in. All right. So there are, as well, I mean, we talked a lot about J&J, but there are also a lot of parallels to the Huertas opinion, which is, of course, newer and you've dealt with in some of your papers. How is the plaintiff here differently situated than the plaintiff in Huertas? In particular, does it matter if she still has some medication or not, whether she finished it or still has some on her shelf? Well, I think that distinction doesn't matter for this plaintiff because of the way that she's chosen to plead her claims. So her theory is that Belvique was less valuable because of the safety risk, but she has disavowed that the risk applies to her. So the only conclusion that we can draw is that the medication was safe for her. So if she had pills left over, I don't think it would matter for her theory. Now, if a different plaintiff… But is your theory then the only way to get standing or to show injury in fact is to actually wait until you get cancer? No. So I think as the Johnson & Johnson decision explains, there are myriad ways to show an economic injury. They just haven't been pleaded here, right? There's premium price. There's alternative products. So there are alternative ways to have an injury, an economic injury. They just simply haven't been pleaded in this case. And, again, the record… It would be a Huerta situation if she had the product, she hadn't used it, and it was determined that it was contaminated by virtue of its ingredients. Wouldn't that be Huertas? I think so, Your Honor. Say a plaintiff had purchased in January of 2020. They heard about the withdrawal request. They still have some medication left over. It's worthless. She couldn't use it. Right. If she has product left over and her theory is waste, then I think that could potentially be an economic injury. But, again, that's not the case here. So we haven't talked about Finkelman and the Super Bowl tickets. You know, it left open maybe the price is too high and there's more evidence here. We got this survey. So does Finkelman support your friend on the other side and suggest that there's economic harm as a result? No, sir. I think Finkelman actually supports our argument with regard to the consumer survey because the court in Finkelman didn't just accept the plaintiff's bold assertion that, well, I overpaid because of the NFL's misconduct. It conducted a detailed analysis of the economic theory, and it concluded that it was too speculative because there were too many analytical gaps and too many factors that simply weren't accounted for in terms of how the ticket prices were determined. And I think that's the same thing here. So, you know, the first problem with this survey is that it asked the respondents what they would pay for a hypothetical weight loss medication that increases the risk of a number of cancers. And so they were asked about a medication that was unsafe for them. And, again, this plaintiff has disavowed any risk to her. So what other people would pay for a medication that was dangerous for them says nothing about whether this plaintiff got the benefit of her bargain. And even setting that issue aside, I think the survey just still has too many analytical gaps between it and the theory that Belvique was worth $6. And I think the most glaring omission is that the survey doesn't even provide enough information for the fact finder to know how prescription medication prices are determined, right? There are many facts that could affect that. And the survey assumes that we can determine that just by asking 400 people, well, what would you pay for this medication that causes cancer, but you don't know anything else about it? And I think that's simply too speculative, right? Because all medications have risks and benefits. And so the value to an individual person is necessarily going to vary. Unlike Johnson & Johnson, this isn't a case where there are, I guess, what you would call self-defeating allegations. This plaintiff doesn't say, if I could, I'd keep buying it. It worked great. Weight melted right off. Does it matter? So that was one of two reasons for the court's holding in Johnson & Johnson. The other reason was that the plaintiff's own allegations showed that it was safe for her. And I want to go through why that's exactly like this case. Okay. Because the plaintiff here represented to the district court in four separate pleadings that she claims no physical injury whatsoever. So starting with the complaint, paragraph 34, this is appendix page 34, quote, this is not a personal injury action in opposition to the first motion to dismiss. This is ECF 23 at page 11. This case is not about real or threatened physical harm. First amended complaint when plaintiff was allowed to clarify her theory of economic injury. This is paragraph 36, appendix page 61. Again, she states this is not a personal injury action. And then in opposition to the second motion to dismiss, this is appendix page 146. Plaintiff does not allege any physical injury whatsoever. And those admissions mirror the admissions in Johnson & Johnson, because there the theory was that, well, this powder potentially causes ovarian cancer. But she told the district court, I'm not claiming physical harm or seeking the recovery of personal injury damages. And so the only conclusion that could be drawn in J&J, just like this case, is that whatever may be true for other people, this plaintiff got a safe product. And plaintiff cannot now claim on appeal that she was personally at risk of cancer, given those statements to the district court. There are some similarities. I mean, the plaintiff here and the plaintiff in Huertas, both were exposed to some carcinogenic medication or product, right? Well, I think a key distinction with Huertas is that the plaintiff there never disclaimed physical injury like this plaintiff. So I think that's a key distinction here. Just like in Johnson & Johnson, the disclaimer of physical injury before the district court really defeats any allegation that this product was unsafe for her. But there couldn't be any actual physical injury in Huertas in any event, because they didn't use it, right? Well, I think the theory was that contamination, that benzene is a carcinogen, and because that potentially causes cancer, I can't use it. I have the bottle, and I paid $40 for it. Give me my money back.  And Huertas actually, I think, confirms the importance of the particularity requirement that was first stated in Johnson & Johnson. So in Huertas, it wasn't enough that the plaintiffs had alleged that some of the products were contaminated with benzene. They had to allege enough facts to show that their products were contaminated, and it's cited to Johnson & Johnson's reasoning that products that are unsafest to others are not relevant to determining whether the named plaintiff is outstanding. So Huertas confirms the importance of the particularity requirement here. Now, accepting the plaintiff's argument would also require the court to effectively overrule the common sense holding of Johnson & Johnson that was reaffirmed in Huertas, that if you're claiming a diminution in value based on an alleged product defect, you have to show that your product was defective. And as Johnson & Johnson recognizes, that simply can't be done where a plaintiff has used all of the product, it worked, and she's not at risk of cancer. So in other words, this case falls within the narrow factual pattern of Johnson & Johnson where the plaintiff's own allegations require the court to conclude that her product was safe. Now, Plaintiff's Counsel represented that every other circuit adopts her theory. That's incorrect. Accepting the plaintiff's argument here would not only break with Johnson & Johnson, it would create a direct split of authority with the Fifth Circuit's decision in Rivera v. Wyeth. So the facts of Rivera are virtually identical to what's alleged here. Their prescription medication was voluntarily withdrawn from the market because of an alleged safety risk. But because the plaintiffs had used all of the medication, because it worked for them, they received the benefit of their bargain. Now, plaintiff's theory would also open the floodgates for plaintiffs to claim economic injuries based only on post hoc information, whether or not it applies to them. So say some people eat at a restaurant and they get sick, and the health department asks the restaurant to close. Under the plaintiff's theory, every person who ever ate at the restaurant would have standing to get their money back, even if they never got sick merely because other people got sick. Now, plaintiff has also... Do we know here that other people did get cancer? I'm sorry? Do we know here that other people did get cancer? Well, FDA certainly did not conclude that Bellevue causes cancer. What it determined in the withdrawal request was that there was a numerical imbalance in a clinical trial, and it asked for voluntary withdrawal based on that. All right. So FDA certainly did not conclude that it causes cancer. It didn't conclude that it was defective. It didn't conclude that it was carcinogenic. It simply asked for a voluntary recall based on this potential risk. And, again, the fact that a product has a potential risk doesn't make it worthless. It doesn't make it defective because, again, all medications have risk and benefits. And so if the mere presence of some risk rendered a product worthless, then every medication on the market would be defective. So every time there is a recall, they'd have to give back money for everybody who still had it because it's potentially problematic. Right. And I think it's not just recall. I mean, under the plaintiff's theory, you know, if there's a new study of a weight loss drug and it says that weight loss averaged 11 pounds and previous studies showed 12 pounds, I think under the plaintiff's theory, if she could put together a survey where people said, well, I would have paid less if I had known that it was only 11 pounds and not 12 pounds, then that plaintiff would have standing to bring a class action regardless of how much weight loss she experienced. Don't we have that with a lot of the weight loss drugs now that are really drastic? There's been known that there's risk of liver damage and all kinds of risks. So those people would arguably be entitled to their money back even if they took it. Right. So under plaintiff's theory, any sort of new or different post hoc information that some consumers say, well, that might have changed what I would have paid would be a basis for a class action. Well, how do you know what you would have paid? I mean, maybe it's an Alzheimer's drug, which is the only one on the market that's going to reverse Alzheimer's, and there's a risk of cancer. Hey, some people might take it anyway. You're going to have individualized, and I guess the particularity aspect is particularly problematic. Right, right. I think that that's another problem with the survey because it doesn't account for the nature of prescription drugs. It assumes that we can determine the price just based on what people say they would pay. But as you know, whether or not there's an alternative available will certainly impact how valuable it is to a given patient. And then there's also the fact of insurance coverage, which is also at play and is going to affect what people pay. Oh, yeah. And so because of those factors, there's just simply too great of an analytical gap here between the survey and the valuation. Now, plainest interpretation of Huertas would, again, require the court to ignore the reasoning of that decision and effectively overrule the particularity aspect of Johnson & Johnson. So plaintiff argues that Huertas confirms that defectively dangerous Belvique is worth less. But, again, that ignores a critical distinction, which is that this plaintiff, her allegations require the court to conclude that her Belvique was safe for her. It wasn't defective. Plaintiff also argues that Belvique was unusable. But, again, her own allegations require the court to conclude that she was able to use it. And, again, plaintiff's position is directly contrary to the Fifth Circuit's decision in Wyeth v. Rivera. I just looked it up, and it's vaguely helpful. But Rivera v. Wyeth turned on that was a tort case, and you're seeking a contract law measure damages. It didn't involve a statute like this. So it's generally helpful, but it's not directly on point. Well, I think the claims in Rivera v. Wyeth do mirror those here because there was a breach of warranty claim. There was some kind of consumer fraud claim, I believe, and also unjust enrichment. So I think the claims are similar. The theory is similar in that they're claiming, well, I was deprived the benefit of my bargain because, essentially, other people are at risk of cancer. And the Fifth Circuit concluded that you got the benefit of your bargain, even though this product was voluntarily withdrawn from the market because you were able to use it. It provided a benefit for you, and you are not claiming to be at any risk of physical injury. So because of how this plaintiff has chosen to plead her claims, this case falls within the narrow circumstances at issue in Johnson & Johnson. Plaintiff's only argument is that Bellevue was less valuable because of an alleged safety risk, and the only conclusion that can be drawn from those allegations is that she got the benefit of her bargain. She got the product, it worked, and by her own admission, it was safe for her, and so the district court's dismissal should be affirmed. Thank you, counsel. And we'll hear rebuttal. Your Honors, I just want to first touch on this post hoc information and whether that would render every single product, you know, that information comes forward later on, and whether a plaintiff would be able to seek compensation. So it's, first of all, this has to do with the risk that was inherited in every product, and I want to talk about In Re Aqueducts. That's a Seventh Circuit case, and the Hortez case relies on this. Now, in that case, it was about a toy that was recalled because it had certain aspects in it. Yeah. Yeah, the child could ingest it. Now, the plaintiff specifically in that case did not allege that their children actually did ingest this and were physically harmed. The court explicitly says they would not have purchased. It's good for standing because the plaintiffs allege that they would not have purchased this product had they known the risks it posed. But they owned a dangerous product. Correct, Your Honor, but in In Re Evenflow, again, and it's not about – I want to point to the quote in In Re Evenflow. It's almost like Hortez because they really can't use this. So in Hortez, and I know, Judge Griffiths, and I see your point with this, their reasoning, but the footnote explicitly states they're not touching on the leftover product. Their use of the word an unusable product goes to the fact that it's not meant to be used. Whether or not they still have it left over or not, it's just the product itself when you purchase it. It's not meant to be used, and that's exactly what happened here. The FDA recall instructed users to stop taking this product. Nothing in the product changed from the time she purchased it to the time of the recall. It had that defect in it when she purchased it. What do you want to say about Rivera? Because it does generally support FLE. It's a similar situation. The refund in that case was not for all the product. It was just the unused product, and the Fifth Circuit said no standing. So I want to talk about that because in Cole v. General Motors, I believe, that's another Fifth Circuit case. It talks about Rivera, and it explains that the plaintiffs got damages for potential physical injuries, but because they never actually suffered these physical injuries, they only were talking about physical injuries by other parties. And it was because they weren't really tying their injury to an economic theory. They were saying, look at these other people that got cancer, or whatever the issue was in that product. We should now, you know, because we did that, we should get money back. But in this case, we're alleging that the injury occurred at the time of purchase. And, Your Honor, to your point about, you know, what other courts hold, NRA aqueducts, of course, held that even if the risk doesn't actually materialize, if you buy a product that holds a risk in it, then. Right, and so the families had this product that was specifically worth less because it was dangerous, and they still had it. So it's kind of different from what we have here. Yes, Your Honor, but it contradicts cases in other circuits that the injury occurs at the time of purchase. It doesn't matter whether the product is a durable versus non-durable product. It's the fact that at the time of purchase, they were under the assumption that it was safe. And when they took it, in this case, every time she took that pill, she increased her risk of cancer. Thank you, counsel. We thank both counsel for their excellent briefing and oral argument today. We'll take the case under advisement.